IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED COMMUNITY BANK,<br><br>    Plaintiff,<br><br>    v.<br><br>JULIE M. NEILL d/b/a CHAMPION RENOVATIONS AND REPAIRS,<br><br>    Defendant. | Civil Action File<br>No. 3:21-cv-00113-CDL |

## ORDER GRANTING MOTION TO STRIKE DEFENDANT'S ANSWER AND FOR DEFAULT JUDGMENT AGAINST DEFENDANT

This matter comes before the Court on Plaintiff's Motion to Strike Defendant's Answer and Render a Default Judgment Against Defendant. [Doc. 37.] Plaintiff United Community Bank ("UCB"), pursuant to Federal Rule of Civil Procedure 37, requests the Court strike the answer filed by Defendant Julie M. Neill d/b/a Champion Renovations and Repairs ("Neill") and enter a default judgment against Neill as a result of Neill's failure of to obey the Court's prior Order compelling her to appear for her deposition. [Doc. 29.] Neill failed to file a response to the motion within the time permitted by Local Rule 7.2.

Upon review of the entire record, the Court makes the following findings of fact and conclusions of law:

**A     Order on Motion to Strike Defendant's Answer.**

Federal Rule of Civil Procedure 37 allows the court to strike out pleadings and render default judgment against a party who fails to obey a court order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).  *See also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (affirming order striking answer and rendering default judgment against defendant who disobeyed court order to appear for deposition).

After Neill failed to appear for her deposition, UCB filed a motion to compel. The Court entered an Order granting the motion to compel, in which it stated that, in relevant part:

> Neill shall appear for her deposition at a date, time and place set by Plaintiff's counsel, which shall be on or before June 22, 2022. If Neill does not appear for her deposition at the time and place specified, the Court will impose sanctions, which will include striking Neill's Answer.

[Doc. 29 at 1.]

On June 8, 2022, UCB served Neill with the Second Notice of Deposition of Julie M. Neill d/b/a Champion Renovations and Repairs (the "Second Notice of Deposition"). [Doc. 33-1.] The Second Notice of Deposition notified Neill that she would be deposed on Tuesday, June 21, 2022, commencing at 10:00 a.m. EDT via Zoom Video Conferencing, and included a Zoom link for the deposition. [*Id.*] UCB served Neill by U.S. mail addressed to both service addresses identified in her former counsel's Motion to Withdraw, as well as by email. [Doc. 33, ¶ 4; Doc. 33-2.] Counsel for UCB also emailed Neill the Court's Order granting the Motion to Compel and a Zoom invitation from the court reporting service for the deposition. [*Id.*]

On June 20, 2022, counsel for UCB reminded Neill via email of the deposition noticed for June 21, 2022, and again attached the Second Notice of Deposition, the Court's Order granting the Motion to Compel, and a Zoom invitation from the court reporting service for the deposition. [Doc. 33, ¶ 4; Doc. 33-2.]

Neill failed to appear for her properly noticed deposition on June 21, 2022. [Doc. 33, ¶ 6; Doc. 34-1.] Accordingly, the Motion to Strike is **GRANTED** and the Court hereby **STRIKES** Defendant's Answer and Defenses. [Doc. 15] due to Neill's failure to obey the Court's prior Order. [Doc. 29.]

**B.        Order on Motion to Render Default Judgment**

By her default, Neill admitted the well-pleaded allegations of fact in UCB's complaint. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *accord Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). "While a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Thornton v. Hosp. Mgmt. Assocs., Inc.*, 787 F. Appx. 634, 638 (11th Cir. 2019) (per curiam) (affirming default judgment as a discovery sanction). "Entry of default judgment is thus only warranted when there is a sufficient basis in the pleadings for the judgment entered." *Id.* In addition, the Court may consider evidence of damages in support of a motion for default judgment and "is not required to hold an evidentiary hearing before granting a default judgment where all essential evidence is already of record." *Carlisle v. Nat'l Commer. Servs., Inc.*, 722 F. Appx. 864, 870 (11th Cir. 2018) (per curiam) (district court was within its discretion to conclude that a hearing was unnecessary).

The Court finds that UCB is entitled to a Final Default Judgment against Neill on its claims for breach of the note and attorneys' fees. The Court specifically finds as follows:

**1.        Findings of Fact**

a.        The Paycheck Protection Program

The Paycheck Protection Program was established through the CARES Act in response to the catastrophic economic impact of the COVID-19 pandemic, and is implemented by the Small Business Administration ("SBA") with support from the Department of Treasury.  [Doc. 1, ¶ 7.] The Paycheck Protection Program provided small businesses, and eligible individuals who are self-employed or independent contractors, with funds to pay payroll costs, including benefits, as

well as interest on mortgages, rent, and utilities. [*Id.*, ¶ 8.] The SBA provides forgiveness for borrowers who received PPP Loans by remitting a forgiveness payment to the lender, so long as the borrower complies with program requirements. [*Id.*, ¶ 9.] If the SBA denies a request for forgiveness, the remaining balance due on the PPP Loan must be repaid by the borrower. [*Id.*, ¶ 10.]

        b.      Neill's PPP Loan Application Form

On or about April 14, 2020, Neill, through the trade name "Champion Renovations and Repairs," applied for PPP Loan from UCB by submitting, amongst other things, a completed PPP Borrower Application Form (the "Application Form"). [*Id.*, ¶ 11; Doc. 1-1.] Neill electronically initialed and signed the Application Form before submitting it to UCB. [Doc. 1, ¶ 12.]

On the Application Form, Neill electronically initialed the following Certification: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." [*Id.*, ¶ 13; Doc. 1-1 at 3.] Based on the Application Form and other materials submitted by Neill, including the Certification, UCB approved and funded a PPP Loan to Neill in the original principal amount of $93,700.00 (the "UCB PPP Loan"). [Doc. 1, ¶ 14.]

        c.      The Loan Documents.

On April 20, 2020, Neill executed and delivered that certain U.S. Small Business Administration Note of even date in the face amount of $93,700.00 made payable to UCB (the "Note"), which memorialized the UCB PPP Loan. [*Id.*, ¶ 15; Doc. 1-2.] The UCB PPP Loan is further evidenced by, amongst other things, that certain Loan Agreement dated April 14, 2020, by and between Neill and UCB (the "Loan Agreement"). [Doc. 1., ¶ 16; Doc. 1-3.]

In Exhibit A to the Loan Agreement, Neill again made certifications to UCB "[i]n order to induce [UCB] to make an SBA guaranteed Loan to [Neill]." [Doc. 1., ¶ 18; Doc. 1-3 at 9.] These certifications included the following: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Borrower has not and will not receive another loan under the Paycheck Protection Program." [*Id.*]

d. <u>Neill Fraudulently Misrepresents to UCB that She Would Not Receive a Second PPP Loan</u>.

Neill falsely certified in the Application Form and Loan Agreement that she "has not and will not receive another loan under the Paycheck Protection Program." [Doc. 1., ¶ 19.] In May 2020, UCB learned that Neill had applied for a second PPP Loan from another lender named Kabbage. [*Id..*, ¶ 20.] In October 2020, Neill admitted that she had received a second PPP Loan from a third lender named BlueVine. [*Id..*, ¶ 21.] The SBA denied forgiveness of the UCB PPP Loan as a result of Neill receiving the second PPP Loan from BlueVine. [*Id..*, ¶ 22.][1]

e. <u>Neill Defaults Under the Loan Documents</u>**.**

Neill is in default under the Loan Documents because she made materially false and misleading representations to UCB or SBA, namely her representations in the Application Form and the Loan Agreement that she "has not and will not receive another loan under the Paycheck Protection Program." [Doc. 1, ¶¶ 23, 31.]

Additionally, Neill is in default of her obligations under the Note and Loan Agreement by failing to pay the amounts owing under the Note as and when due. [*Id.*, ¶¶ 24, 31.] Specifically, the Note, which is dated April 20, 2020, required the following: "Borrower must repay principal and interest payments of $5,246.86 every month, beginning seven (7) months from the month this

---

[1] In support of its motion for default judgment, UCB presented evidence that Neill made additional false certifications that were uncovered during discovery. UCB did not point to any well-pleaded allegations in its complaint regarding these additional false certifications, and Neill is not deemed to admit them by virtue of her default.

Note is dated; payments must be made on the fifth (5th) calendar day in the months they are due." [Doc. 1-2 at 3.]

By letter dated March 15, 2021, UCB provided a notice of default and demand for payment to Neill as a result of Neill's defaults under the Loan Documents and demanded immediate payment of all amounts due and owing under the Loan Documents (the "March Notice of Default"). [Doc. 1, ¶ 25; Doc. 1-4.] By letter dated September 20, 2021, UCB provided a Second Notice of Default and Demand for Payment to Neill as a result of Neill's defaults under the Loan Documents and demanded immediate payment of all amounts due and owing under the Loan Documents (the "September Notice of Default"). [Doc. 1, ¶ 26; Doc. 1-5.]

The March Notice of Default and the September Notice of Default (collectively, the "Notices of Default") each further notified Neill, pursuant to O.C.G.A. § 13-1-11, that UCB intended to enforce the attorneys' fees provisions in the Loan Documents and she had ten (10) days from receipt of the respective Notices of Default within which to pay the amounts due under the Loan Documents without also being liable for attorneys' fees. [Doc. 1, ¶ 27.] Neill did not pay the amounts due under the Loan Documents within ten (10) days from receipt of the respective Notices of Default. [*Id.*, ¶ 28.]

II. **Conclusions of Law.**

    a. <u>Breach of the Note and Loan Agreement</u>

Neill is liable to UCB under the Note and Loan Agreement. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Moore v. Lovein Funeral Home, Inc.*, 852 S.E.2d 876, 880 (Ga. App. 2020). "A breach occurs if a contracting party repudiates or renounces

liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *Id.*

Neill's failed to perform under the Note and Loan Agreement and is liable to UCB. An evidentiary hearing is not necessary to determine damages because all the necessary evidence is in the record. *See Carlisle*, 722 Fed. Appx. at 870. As of September 30, 2022, Neill is liable to UCB for the principal balance of the Note in the amount of $93,700.00, accrued interest in the amount of $2,318.38, and late charges in the amount of $1,283.61. (Szkutnik Decl., ¶ 11 & Exs. B, C..), ECF No. 35.

      b.      <u>Fraudulent Misrepresentation</u>.

In addition to its breach of contract claim that Neill is liable under the Note and Loan Agreement, UCB asserted a fraudulent misrepresentation claim in its complaint, contending that Neill fraudulently induced UCB to issue the PPP loan to her. "In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud. *Owens v. Larry Franklin Properties, Inc.*, 870 S.E.2d 218, 222 (Ga. Ct. App. 2022). Here, UCB elected to affirm the contract and sue for damages flowing from Neill's breach. UCB did not point to any authority that it may also recover in tort for related conduct under a fraudulent inducement theory. Accordingly, UCB is not entitled to default judgment on the fraudulent misrepresentation claim and is not entitled to punitive damages.[2]

---

[2] UCB acknowledges that punitive damages "may be awarded only in such tort action in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). Moreover, the facts UCB cites in support of its punitive damages claim include facts that were not alleged in the complaint and thus were not admitted by virtue of Neill's default.

c.     Attorneys' Fees

UCB seeks attorneys' fees under both O.C.G.A. § 13-1-11 and O.C.G.A. § 13-6-11.  Under O.C.G.A. § 13-1-11(a), obligations "to pay attorney's fees upon any note or other evidence of indebtedness" are valid.  Where, as here, the note or loan agreement provides for the recovery of "reasonable attorney's fees" in connection with enforcing a loan agreement" (ECF No. 1-3 ¶ 7.5) but does not specify a specific amount of attorney's fees, then "reasonable attorney's fees . . . shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note . . . and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." The Notices of Default each notified Neill that UCB intended to enforce the attorneys' fees provisions in the Loan Documents and she had ten (10) days from receipt of the respective Notices of Default within which to pay the amounts due under the Loan Documents without also being liable for attorneys' fees.  [Doc. 1, ¶ 27.]  Neill did not pay the amounts due under the Loan Documents within ten (10) days from receipt of the respective Notices of Default.  [*Id.*, ¶ 28.]. Under the statutory formula, Neill is liable to UCB for reasonable attorney's fees under O.C.G.A. § 13-1-11 in the amount of $9,669.34.

The Court also awards UCB its expenses of litigation, including attorney's fees, pursuant to O.C.G.A. § 13-6-11.  That statute allows the recovery of attorney fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." OCGA § 13-6-11.  So, "if a plaintiff in its original complaint puts the defendant on notice that it is seeking attorney fees and expenses under OCGA § 13-6-11 as part of the relief prayed for in the case, and if a default judgment is subsequently entered against the defendant for failing to answer the complaint, then the plaintiff is entitled to an award of attorney fees and expenses as a matter of law." *Cotto L. Grp., LLC v. Benevidez*, 870 S.E.2d 472, 480 (Ga. Ct. App.

8

2022) (noting that it is "reversible error to decline to award attorney fees where a default judgment has been entered on a complaint that specifically seeks attorney fees under OCGA § 13-6-11"). UCB presented evidence that it incurred $36,751.00 in attorneys' fees and $1,657.50 in expenses for this matter. Levy Decl. ¶ 13, ECF No. 33.  As discussed above, the Court has already awarded $9,669.34 in attorney's fees under O.C.G.A. § 13-1-11.  The Court hereby awards the remaining $27,051.66, plus $1,657.50 in expenses, under O.C.G.A. § 13-6-11.

**C.   Conclusion**

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion to Strike is **GRANTED** and the Court hereby **STRIKES** Defendant's Answer and Defenses. [Doc. 15] due to Neill's failure to obey the Court's prior Order. [Doc. 29.];

2. Judgment be **ENTERED** in favor of UCB and against Neill in the amount of $135,680.49, which is comprised of the principal balance of the Note in the amount of $93,700.00, accrued interest in the amount of $2,318.38, late charges in the amount of $1,283.61, attorneys' fees in the amount of $36,751.00, and expenses in the amount of $1,657.50.

3. Plaintiff's Motion for Attorneys' Fees based on Neill's failure to attend her deposition is **DENIED AS MOOT**, since the Court is awarding all fees in the Judgment.

This is a final judgment of the Court.

IT IS SO ORDERED, this 12th day of October, 2022.

　　　　　　　　　　　　　　　　　　S/Clay D. Land_____
　　　　　　　　　　　　　　　　　　CLAY D. LAND
　　　　　　　　　　　　　　　　　　U.S. DISTRICT COURT JUDGE
　　　　　　　　　　　　　　　　　　MIDDLE DISTRICT OF GEORGIA